IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| CAROL SAMAROV, *PRO SE* <br><br> Plaintiff, <br><br> v. <br><br> COMCAST BROADBAND SECURITY, LLC D/B/A XFINITY HOME, <br><br> Defendant. | Case No. 1:20-CV-228-SA-DAS <br><br> Judge Sharion Aycock <br> Magistrate Judge David A. Sanders |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AND/OR MOTION TO STRIKE DEMANDS IN PRAYER FOR RELIEFS**

Defendant, Comcast Broadband Security, LLC ("Comcast" or "Defendant"), by and through its attorneys and pursuant to Federal Rules of Civil Procedure 12(b) and 12(f), respectfully submits this motion to dismiss the Complaint or, in the alternative, to strike Plaintiff's prayer for relief.

**I.      INTRODUCTION**

This lawsuit arises from Plaintiff Carol Samarov's insistence that Comcast permit her unleashed dog to freely roam its retail store. Instead of participating in the interactive process with Comcast, Plaintiff has filed this *pro se* action under Title III of the Americans with Disabilities Act ("ADA"). This Court should dismiss Plaintiff's Complaint for several reasons. First, she seeks only monetary relief, a remedy not made available to private plaintiffs under Title III. Second, Plaintiff does not plausibly allege that she has a qualified disability under the ADA, and her dog is a qualified service animal, or that her dog is exempt from the leash or harness requirement. Third, Plaintiff never requested a reasonable accommodation from Comcast before filing suit. Finally, Plaintiff's false imprisonment suit fails as a matter of law. Because Plaintiff

has made no plausible factual allegations to support her claims, this Court should dismiss the Complaint under Rule 12(b)(6).

In the alternative, this Court should strike Plaintiff's prayer for relief. In her Complaint, Plaintiff seeks an award of no less than $2,000,000 in actual and punitive damages, plus costs and interest. Comcast is not the only defendant from whom Samarov demands millions, in fact she has filed at least seven similar or identical complaints in the Northern District.[1] Plaintiff's proposed remedy—a veritable windfall—is unavailable to private parties under the ADA, and should be struck from her pleading.

## II. ALLEGATIONS OF THE COMPLAINT

In the Complaint, Plaintiff claims that she "is a disabled veteran whose disability requires the use of a service dog." Compl. [Dkt. #1] at ¶ 9. She claims that "due to [her] disability, she does not put a leash, vest or other restraint on her service dog while in public." *Id.* at ¶ 10. While Plaintiff notes her dog is "housebroken," *id.*, she fails to state actual facts concerning the animal's training to do work or perform tasks, or the relationship of such training to Plaintiff's alleged disability. Similarly, Plaintiff alleges that "it is necessary" to allow her animal to roam freely "to notify another human should Plaintiff experience a panic attack," *id.*, but fails to state why a leash or harness would prevent the animal from performing this task in a small, enclosed retail floor staffed with sales associates.

Plaintiff alleges that she entered Defendant's store on July 16, 2020, with her service animal and that it "refused, in the name of its policies, practices, and procedures, to permit Plaintiff to use her properly trained and controlled service dog without harassment by employees or

---

[1] Five of which currently occupy this Court's docket. *Samarov v. Best Buy* (No. 1:20-CV-224-SA-DAS), *Samarov v. Walmart* (No. 1:20-CV-00227-MPM-DAS), *Samarov v. Holly Hill Salon* (No. 1:20-CV-226-SADAS), *Samarov v. Game X Change* (No. 1:20-CV-231-SA-DAS), *Samarov v. Dollar General* (No. 1:20-CV-229-DMB-DAS), Samarov v. Todd's Big Star (No. 1:20-CV-230-SA-DAS), and *Samarov v. Aldi Inc. (Tennessee)* (No. 1:20-CV-225-SA-DAS).

customers." *Id.* at ¶ 17. According to her Complaint, Plaintiff advised a retail associate that her animal was a service dog. *Id.* at ¶ 13. Notably, Plaintiff does not provide any factual allegations to support her blanket assertion that the animal was a service dog that needed to be unleashed in order to perform its duties.

Because Defendant did not want Plaintiff's dog exploring its store unrestrained, Plaintiff has allegedly "suffered years of mental and emotional damages," has incurred costs of counseling and has experienced a worsening of her post-traumatic stress disorder symptoms. *Id.* at ¶ 19. Accordingly, Plaintiff asks this Court to grant her "[a]ctual damages in the amount of $1,000,000" and "[p]unitive damages in the amount of $1,000,000" for purported violations of the ADA. *Id.* p. 5.

### III. ARGUMENT

#### A. Legal Standard

Pursuant to Federal Rules of Civil Procedure Rule 12(b)(6), dismissal of a complaint is proper when the plaintiff has failed to state a claim upon which relief can be granted. *IberiaBank Corp. v. Illinois Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020). To overcome a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim must demonstrate "more than a sheer possibility that a defendant has acted unlawfully," and it is insufficient to lodge "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* That a court must "accept as true all of the

allegations contained in a complaint is inapplicable as to legal conclusions." *Id.* This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claim. *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008).

Alternatively, under Rule 12(f) a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." District courts on a Rule 12(f) motion have "ample discretion . . . to order stricken from the complaint any redundant or immaterial matter. *In re Beef Indus. Antitrust Litig.,* MDL Docket No. 248, 600 F.2d 1148, 1168 (5th Cir. 1979).

A *pro se* complaint is held to "less stringent standards than formal pleadings draft by lawyers," but it must still comply with procedural standards. *Smith v. St. Jude Med.,* No. 1:15-CV-263-KS-RHW, 2015 WL 9094383, at *2 (S.D. Miss. Dec. 16, 2015); *Vela v. Manning*, 469 Fed. Appx. 319, 321 (5th Cir. 2012) ("The liberal pro se pleading standard still demands compliance with procedural standards.").

      **B.**      **Plaintiff's Complaint Fails to State a Claim Under Title III of the ADA**

Plaintiff's complaint, read in the light most favorable to her, does not state an ADA claim. She requests relief unavailable under Title III, and even if she sought an injunction as is her right under that Title she fails to state facts sufficient to state a plausible claim to relief.[2]

      **1.**      **Plaintiff's ADA claim fails because actual and punitive damages are not available to private parties**

Plaintiff pursues a claim against Comcast under Title III of the ADA. Compl. at ¶¶ 6, 16-

---

[2] Except for a brief reference in her prayer for relief, *see* Compl. at p. 5, Plaintiff does not appear to actually plead a claim for false imprisonment. To the extent she pleads that tort, she has failed to allege any of its requisite elements. To establish a false imprisonment claim against the Defendant, Plaintiff must show that she was detained and that such detainment was unlawful. *Hobson v. Dolgencorp, LLC,* 142 F. Supp. 3d 487, 493 (S.D. Miss. 2015) (quoting *Mayweather v. Isle of Capri Casino,* 996 So. 2d 136, 140 (Miss. Ct. App. 2008)). Plaintiff alleges no facts to show she was detained or that anyone used force for the threat of force against her.

17. Because she seeks relief unavailable to private parties under Title III, the Court should dismiss it under Rule 12(b)(6). Private parties who make claims against places of public accommodation under Title III may seek injunctive relief. 42 U.S.C. § 12188; s*ee e.g.*, *Johnson v. Gambrinus Company/Spoetzl Brewery*, 116 F.3d 1052 (5th Cir. 1997). Title III does not, however, provide for remedies at law. *Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 183 (5th Cir. 2015). Despite this limitation, Plaintiff asks this Court to award her at least $1,000,000 in actual damages and $1,000,000 in punitive damages.

The relief requested is overly broad and not available under the law. Plaintiff's demand contradicts well-settled authority, including Fifth Circuit precedent, holding that Title III of the ADA does not make money damages available to private parties. *Perez*, 624 F. App'x at 183 ("Damages are not available for a Title III ADA claim brought by a private party. . . "). The Fifth Circuit is not alone in this: Sister-Circuits that considered the question have also held that no such right exists.[3]

In fact, courts in the Fifth Circuit routinely dismiss complaints pursuant to Rule 12(b)(6) for seeking only monetary relief under Title III of the ADA. When a wheelchair-bound plaintiff sought only monetary relief for injuries resulting from his attempt to navigate a three-inch curb on defendant's property, a Mississippi district court judge dismissed the plaintiff's Title III complaint for failure to state a claim. *Stuart v. Forest Animal Hosp.*, No. 3:12-CV-37TSL-MTP, 2012 U.S. Dist. LEXIS 196547, at *2 (S.D. Miss. Sep. 4, 2012). Similar Title III claims have been dismissed when the plaintiff demanded "only monetary damages," relief which was "unavailable under Title

---

[3] *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 51 (1st Cir. 2006); *Powell v. National Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2nd Cir. 2004); *Bowers v. NCAA*, 346 F.3d 402, 433 (3d Cir. 2003); *Am Bus. Ass'n v. Slater*, 231 F.3d 1, 5 (D.C. Cir. 2000); *Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 293 (6th Cir. 1999); *Ruffin v. Rockford Mem'l Hosp.*, 181 F. App'x 582, 585 (7th Cir. 2006); *Stebbins v. Legal Aid of Arkansas*, 512 F. App'x 662, 663 (8th Cir. 2013); *Wander v. Kans*, 304 F.3d 856, 858 (9th Cir. 2002); *Jairath v. Dyer*, 154 F.3d 1280, 1283 n.7 (11th Cir. 1998).

III of the ADA." *Ajuluchuku v. FedEx Kinko's Office & Print Servs.*, No. 3:05-CV-2417-G, 2006 U.S. Dist. LEXIS 101006, at *7-8 (N.D. Tex. June 30, 2006). And an employee who sought direct payment for a purported violation of Title III of the ADA had her claims dismissed with prejudice because she was entitled only to injunctive relief. *Morrison v. Unum Life Ins. Co. of Am.*, No. 06-2400, 2008 U.S. Dist. LEXIS 68253, at *8-9 (W.D. La. Sep. 10, 2008).

Because Plaintiff requested only money damages which are not permitted under this title, the Court should dismiss the action for failure to state a claim under Title III of the ADA.

### 2. Plaintiff has not alleged facts sufficient to demonstrate she suffers from a qualified disability

"To establish a *prima facie* case for discrimination under the ADA, a plaintiff must be a qualified individual with a disability." *Blanks v. Sw. Bell Commc'ns, Inc.*, 310 F.3d 398, 400 (5th Cir. 2002). Plaintiff fails to articulate any facts asserting that she has a qualified disability rather than "merely having an impairment," which, it is well established, "does not make one disabled for purposes of the ADA." *Hale v. King*, 642 F.3d 492, 501 (5th Cir. 2011) (quoting *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 614 (5th Cir. 2009)). Rather, having a "disability" means "a physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C § 12102(1). Thus, "absent allegations that [a plaintiff's] ailments substantially limited [her] in the performance of a major life activity," she cannot state a claim under the ADA. *Hale*, 642 F.3d at 501.

In order to be "substantially limited" Plaintiff must "be unable to perform a major life activity that the average person in the general population can perform, or to be significantly restricted in the ability to perform it." *Hale*, 642 F.3d at 500. Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and

working." 42 U.S.C. § 12102(2)(A).

Plaintiff has alleged no limitations for such major life activities. She claims she is disabled and requires a service animal. Compl. at ¶ 9. This allegation is conclusory and therefore insufficient under *Iqbal*. Plaintiff suggests that it is possible that she suffer a panic attack in public, possibly related to her diagnoses for post-traumatic stress disorder ("PTSD"). *Id.* at ¶¶ 9, 19. This allegation, too, is insufficient to state a claim. At best, Plaintiff has alleged an impairment, but at no point in her Complaint does she allege any of her major life activities are substantially limited.

Plaintiff must do more than allege a diagnosis of PTSD or that she could experience a panic attack. *See Hale*, 642 F.3d at 500 (affirming dismissal of an ADA claim when plaintiff alleged "chronic back pain, chronic Hepatitis C, and psychiatric condition" but did not allege the impact of those conditions in their life activities); *Smith v. Spindletop MHMR Servs.*, No. 1:20-CV-00039-TH, 2020 U.S. Dist. LEXIS 110476, at *6-7 (E.D. Tex. Mar. 24, 2020), *reported and recommendation adopted*, 2020 U.S. Dist. LEXIS 109398 (June 23, 2020) (dismissing complaint where plaintiff stated merely "that he [was] disabled but fail[ed] to plead specific facts regarding his disability)).

The Plaintiff here fails to plead anything beyond conclusory allegations related to her alleged disability, and therefore she fails to state an ADA claim. Thus, the Court should dismiss her claim.

### 3. Plaintiff's allegations that her dog is a service animal exempt from the leash requirement are wholly conclusory

Plaintiff bases her claim on alleged interactions involving her unleashed dog at Defendant's store. She labels this animal a "service dog," but this assertion does not make it so. As with her impairment, Plaintiff fails to allege any facts supporting her claim that the dog is a service animal as defined by the ADA. This failure also entails dismissal of her Complaint for failure to state a

claim.

An individual with a qualified disability under the ADA may utilize a service animal for assistance in performing specific tasks, and public entities must generally modify their policies to accommodate the use of a service animal. *Smith v. Spindletop MHMR Servs.*, 2020 U.S. Dist. LEXIS 110476, at *5 (citing 28 C.F.R. § 35.136(a)). The ADA defines a service animal as "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability." 28 C.F.R. § 35.104. Even legitimate service animals are generally required to be leashed:

> A service animal shall be under the control of its handler. A service animal shall have a harness, leash, or other tether, unless either the handler is unable because of a disability to use a harness, leash, or other tether, or the use of a harness, leash, or other tether would interfere with the service animal's safe, effective performance of work or tasks, in which case the service animal must be otherwise under the handler's control (e.g., voice control, signals, or other effective means).

28 C.F.R. § 35.136(d). While there are exceptions to the leashing requirement, Plaintiff must first allege that the animal plausibly qualifies as a service animal.

For example, in *Spindletop*, a community mental health center asked the plaintiff to leash his dog and directed him to leave after he refused that request. 2020 U.S. Dist. LEXIS 110476, at *1. The court granted defendant's motion to dismiss because the plaintiff made conclusory allegations that the animal was a service dog, claiming only that it had a "service animal I.D. card." *Id.* at *7. Likewise, in *Houston v. DTN Operating Co., LLC,* the court dismissed the plaintiff's claims related to the use of an alleged service animal because the plaintiff failed to plead facts showing the animal was "specially trained or equipped" to help with the plaintiff's disability. 2017 U.S. Dist. LEXIS 171676, at *16-18 (E.D. Tex. Oct. 17, 2017).

Plaintiff has done nothing to distinguish her claim from those in *Spindletop* and *Houston*,

and her Complaint should meet the same fate. Without specific factual allegations in support, Plaintiff claims that her dog is a service animal and that it may try to notify someone should Plaintiff have a panic attack. Compl. at ¶ 10. She makes no claim that the animal is individually trained to do work or to perform tasks, nor alleges facts relating the training to her disability. The ADA does not protect the use of all animals or even emotional support animals; it only protects properly trained service animals. *Houston* at \*18. An animal that provides only comfort or reassurance is "equivalent to a household pet [] and does not qualify as a service animal under the ADA." *Id.* Although she couches her pet's function in the label "service animal" and makes bare assertion that it may notify a person should Plaintiff experience a panic attack, Plaintiff has not alleged that the animal is any more than a household pet.

Even if Plaintiff has sufficiently alleged her dog is a service animal her claim will fail because she has not alleged factual allegations as to why she is eligible for a leash exemption. *Thomas v. Univ. of S. Fla.*, No. 8:19-CV-55-T-36AAS, 2019 WL 2452825 (M.D. Fla. June 12, 2019). In *Thomas* a plaintiff with PTSD sued the University of South Florida after the campus bus system refused to allow him to ride a bus with an unleashed service dog. *Id.* at \*1-2. The court dismissed plaintiff's claim because he did not allege "any facts indicating that Plaintiff was unable to control the service animal via a harness, leash, or other tether because such use would interfere with the service animal's safe, effective performance of work or tasks. *Id.* at \*4. Likewise, the plaintiff in *Spindletop* failed to allege facts sufficient to support an exception to the same general leashing requirement. *Spindletop*, 2020 U.S. Dist. LEXIS 110476 at \*7.

By merely asserting that she "does not put a leash . . . or other restraint" on her dog "due to [her] disability," and that "[i]t is necessary for [her] service dog to be free to notify another human should Plaintiff experience a panic attack," Compl. at ¶ 10, Plaintiff makes a conclusory

allegation. She offers no facts in support of her conclusion, as did the plaintiffs in *Thomas* and *Spindletop*. Like in those cases, this Court should conclude that Plaintiff's claim fails as a matter of law.

### 4. Plaintiff also fails to state a claim for discrimination under Title III

Independent of the flaws in Plaintiff's Complaint discussed above, Plaintiff's failure to allege that she requested a reasonable accommodation or that she has been discriminated against requires dismissal of her Complaint.

Title III of the ADA provides that: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Subsection (b)(2) defines "discrimination" in subsection (a) to include, among others, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. . . ." 42 U.S.C. § 12182(b)(2).

The Fifth Circuit has made clear that the "plaintiff has the burden of proving that a modification was requested and that the requested modification is reasonable." *Johnson*, 116 F.3d at 1059. Of course, that plaintiff "must actually request a modification." *Bailey v. Bd. of Commissioners of Louisiana Stadium & Exposition Dist.*, No. CV 18-5888, 2020 WL 5309962, at *59 (E.D. La. Sept. 4, 2020) (citing *Johnson*, 116 F.3d at 1059-60)). Such a request must be "more than just a statement that the person with the disability is 'unhappy with the manner in which' the defendant handled the situation." *Id.* at *151 (quoting *Dahlberg v. Avis Rent A Car Sys., Inc.*, 92 F. Supp. 2d 1091, 1108 (D. Colo. 2000)). Instead, "the plaintiff must suggest a modification that 'would rectify the problem which he perceives.'" *Id.*

Applying that principle, courts in the Fifth Circuit have routinely rejected barebones ADA claims like the one alleged here. See, e.g., *Betancourt v. Federated Dep't Stores*, 732 F. Supp. 2d 693, 711 (W.D. Tex. 2010) (granting motion to dismiss because the plaintiff failed to "allege[] the existence of a policy, that she requested a modification of such policy, that the requested modification was reasonable, or that it was denied"). Without factual allegations that Plaintiff actually requested a reasonable modification, Plaintiff cannot state a claim.

Plaintiff's allegations of "harassment" do not salvage her claim. She alleges that Comcast employees questioned her about her dog and her disability and supposedly told her that law enforcement would be called if she did not leave with her dog. Compl. At ¶ 13. Notably she does not claim that Comcast ever denied her entry. Even accepting these allegations as true Plaintiff has not identified a plausible basis for an ADA claim. *See Roe v. Providence Health Sys.-Oregon*, 655 F. Supp. 2d 1164, 1168 (D. Or. 2009) (finding no discrimination where hospital did not deny entry to an individual and her service dog but did question her about odor and obstruction of activities).

The ADA "cannot regulate individual's conduct so as to ensure that they will never be rude or insensitive to persons with disabilities." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 157 (2d Cir. 2008). It is regrettable that Plaintiff took offense to her treatment at Comcast's retail store, but even if it was rude for Comcast employees to question Plaintiff, which Comcast denies, incivility does not a Title III violation make. *See Bentley v. JDM Enterprises*, No. 6:18-CV-06477 EAW, 2020 WL 5250490, at *5 (W.D.N.Y. Sept. 3, 2020) (holding that "while it may have been rude and inappropriate for [the manager] to question Plaintiff on two occasions as to whether he had properly parked in a handicapped designated spot, it did not amount to a Title III violation").

    **C.**    **Plaintiff's Prayer for Relief Should Be Struck Because it Is Unrecoverable As a Matter of Law**

Rule 12(f) allows the Court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007). A Court may strike any part of the prayer for relief when damages sought are not recoverable as a matter of law. *Jaeckle v. Flagler Coll., Inc.*, No. 3:19-CV-1323-J-32MCR, 2020 WL 5016901, at *2-3 (M.D. Fla. Aug. 25, 2020); *see Baptist v. City of Kankakee*, No. 03-2115, 2004 WL 7339575, at *2 (C.D. Ill. Oct. 15, 2004) (striking a prayer for relief that asked the court to make whole an entire class of people subject to discriminatory testing when they were not parties and the claim was not a class action); *Byers v. Rockford Mass Transit Dist.*, 635 F. Supp. 1387, 1391 (N.D. Ill. 1986) (striking excessive and unauthorized claim for damages).

Courts have not hesitated to strike prayers for damages in ADA claims when damages were not available to the plaintiff. *See Kutrip v. City of St. Louis*, No. 4:05-CV-358 (CEJ), 2009 WL 2170046, at *1 (E.D. Mo. July 20, 2009) (striking punitive damages from complaint alleging ADA violations); *Johnson v. Metro. Sewer Dist.*, 926 F. Supp. 874, 876 (E.D. Mo. 1996) (granting motion to strike punitive damages in four counts under the ADA). Plaintiff's demanded relief is simply not available to her. *Morrison*, No. 06-2400, 2008 U.S. Dist. LEXIS 68253, at *11 (W.D. La. Sep. 10, 2008); *Bell v. Armstrong Ice Cream*, No. CV 18-19, 2020 WL 5637658, at *2 (D.V.I. Sept. 21, 2020) (dismissing ADA claims of handicapped plaintiff who was refused service at retail location because of his service animal and demanded $100,000 in damages). Since monetary relief is not available to private parties under Title III of the ADA, Plaintiff's prayer is immaterial to her claims and should be struck. *Jaeckle*, No. 3:19-CV-1323-J-32MCR, 2020 WL 5016901, at *2.

## IV. CONCLUSION

There is no right to damages—either actual or punitive—for claims under Title III. The subsection which prohibits discrimination against persons with disabilities in places of public

accommodation limits remedies available to private claimants to injunctive relief. Moreover, Plaintiff has not pled facts sufficient to state a claim that is plausible on its face. Defendant respectfully requests that the Court grant its motion and dismiss Plaintiff's complaint, or in the alternative strike Plaintiff's prayers for actual and punitive damages.

Dated: March 1, 2021

Respectfully submitted,

**Comcast Broadband Security, LLC D/B/A Xfinity Home**

By its attorneys,
Daniel, Coker, Horton & Bell

By: /s/ *Robert F. Stacy, Jr.*
Robert F. Stacy, Jr.

Robert F. Stacy, Jr. (MS Bar No. 7764)
DANIEL, COKER, HORTON & BELL
P.O. Box 1396
Oxford, MS 38655
Tel: (662) 232-8979
Email: *rstacy@danielcoker.com*